1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                           EASTERN DISTRICT OF CALIFORNIA

10

11   BEMIS COMPANY, INC.,                    No. 2:19-cv-00344-TLN-KJN

12                  Plaintiff,

13         v.                                 **ORDER GRANTING PLAINTIFF'S *EX***
                                              ***PARTE* MOTION FOR TEMPORARY**
14   BRADLEY SUMMERS,                         **RESTRAINING ORDER AND ORDER TO**
                                              **SHOW CAUSE WHY PRELIMINARY**
15                  Defendant.                **INJUNCTION SHOULD NOT ISSUE**

16

17         This matter is before the Court pursuant to Plaintiff, Bemis Company Inc.'s ("Plaintiff")

18   *Ex Parte* Motion for Temporary Restraining Order ("TRO") and Order to Show Cause Why

19   Preliminary Injunction Should Not Issue.  (ECF No. 3.)  For the reasons discussed below,

20   Plaintiff's motion is GRANTED.

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

                                              1

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff alleges it is a global supplier of packaging solutions and products. (ECF No. 1 ¶ 3.) Plaintiff alleges Defendant Bradley Summers ("Defendant") is a former employee of Plaintiff's. (ECF No. 1 ¶ 4.) According to Plaintiff, Defendant was a technical service representative responsible for performing customer audits and film trials, in which he would gather confidential data about Plaintiff's products. (ECF No. 1 ¶ 11.) Defendant allegedly had access to trade secret and confidential information regarding Plaintiff's customers. (ECF No. 1 ¶ 12.) Prior to accessing the confidential data, information, and trade secrets, Defendant was required to sign confidentiality and non-disclosure agreements. (ECF No. 1 ¶ 12.)

Plaintiff claims it has spent significant money, time, and effort developing trade secret information used to analyze the needs of and to create product and service offerings for its client base. (ECF No. 1 ¶ 16.) According to Plaintiff, Plaintiff has secured confidential information, which is not known to the public, and which provides Plaintiff with a "significant market advantage due to the economic value arising from [the confidential information] not being generally known to the public, and therefore [this information] is a trade secret." (ECF No. 1 ¶ 17.)

Plaintiff alleges that at some point prior to October 1, 2018, Defendant began to plan his resignation, and began efforts to misappropriate confidential information, including attempting to remove information from Plaintiff's secured network by uploading it to a private cloud-storage provider. (ECF No. 1 ¶¶ 23–24.) According to Plaintiff, on December 11, 2018, Defendant received an offer to work for Plaintiff's competitor, Winpak. (ECF No. 1 ¶ 25.) Defendant allegedly provided Winpak with the non-disclosure and non-compete agreements he signed for employment with Plaintiff. (ECF No. 1 ¶ 25.) Plaintiff alleges that on December 12, 2018, Defendant began removing materials from his work computer by use of a personal external storage drive. (ECF No. 1 ¶ 26.) According to Plaintiff, in December 2018, after Defendant accepted his new position with Winpak, he removed a large number of documents, many of them confidential, proprietary, and trade secret, from his computer with an external storage device. (ECF No. 1 ¶¶ 27-29.)

Plaintiff alleges that on January 2, 2019, Defendant resigned from his employment and notified Plaintiff he would be going into real estate with his wife.  (ECF No. 1 ¶¶ 30–31.)  At some point thereafter, Plaintiff discovered Defendant actually began working for Winpak.  (ECF No. 1 ¶ 32.)  According to Plaintiff, Plaintiff then conducted a forensic analysis of Defendant's computer and email accounts which showed Defendant copied significant amounts of confidential and trade secret information from his work computer onto a personal external storage device.  (ECF No. 1 ¶ 36–38.)

On February 26, 2019, Plaintiff filed a complaint alleging breach of contract and violations of the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836 and the California Uniform Trade Secrets Act, Cal. Civ. Code § 3426, *et seq.*  (ECF No. 1.)  On the same day, Plaintiff filed the instant motion for TRO, asking the Court to enjoin Defendant from using, disclosing or retaining Plaintiff's confidential information.  (ECF No. 3.)

**II.  STANDARD OF LAW**

A temporary restraining order is an extraordinary and temporary "fix" that the court may issue without notice to the adverse party if, in an affidavit or verified complaint, the movant "clearly show[s] that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition."  Fed. R. Civ. P. 65(b)(1)(A).  The purpose of a temporary restraining order is to preserve the status quo pending a fuller hearing.  See Fed. R. Civ. P. 65.  "Temporary restraining orders are governed by the same standard applicable to preliminary injunctions."  *Aiello v. One West Bank*, No. 2:10-cv-0227- GEB-EFB, 2010 WL 406092 at *1 (E.D. Cal. Jan. 29, 2010) (internal quotation and citations omitted); Local Rule 231(a).

Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)).  "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held."  *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981) (emphasis added); *see also Costa Mesa City Employee's Assn. v. City of Costa Mesa*, 209 Cal.

App. 4th 298, 305 (2012) ("The purpose of such an order is to preserve the status quo until a final determination following a trial.") (internal quotation marks omitted); *GoTo.com, Inc. v. Walt Disney, Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000) ("The status quo ante litem refers not simply to any situation before the filing of a lawsuit, but instead to the last uncontested status which preceded the pending controversy.") (internal quotation marks omitted).  In cases where the movant seeks to alter the status quo, preliminary injunction is disfavored and a higher level of scrutiny must apply.  *Schrier v. University of Co.*, 427 F.3d 1253, 1259 (10th Cir. 2005). Preliminary injunction is not automatically denied simply because the movant seeks to alter the status quo, but instead the movant must meet heightened scrutiny.  *Tom Doherty Associates, Inc. v. Saban Entertainment, Inc.*, 60 F.3d 27, 33–34 (2d Cir. 1995).

"A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter*, 555 U.S. at 20.  A plaintiff must "make a showing on all four prongs" of the *Winter* test to obtain a preliminary injunction.  *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).  In evaluating a plaintiff's motion for preliminary injunction, a district court may weigh the plaintiff's showings on the *Winter* elements using a sliding-scale approach.  *Id.*  A stronger showing on the balance of the hardships may support issuing a preliminary injunction even where the plaintiff shows that there are "serious questions on the merits...so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.*  Simply put, Plaintiff must demonstrate, "that [if] serious questions going to the merits were raised [then] the balance of hardships [must] tip[ ] sharply in the plaintiff's favor," in order to succeed in a request for preliminary injunction.  *Id.* at 1134–35 (emphasis added).

### III.    ANALYSIS

To succeed on their motion, Plaintiffs must make a showing on all four elements of the *Winter* test.  *Alliance for the Wild Rockies*, 632 F.3d at 1135.  The Court therefore addresses each prong of the injunctive relief analysis in turn.

///

4

A. <u>Likelihood of Success on the Merits</u>

      i.   *Violation of Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836, and California Uniform Trade Secrets Act, Cal. Civ. Code § 3426,* et seq.

The standards for establishing misappropriation of trade secrets under federal and California law are similar. Both define "trade secret" as information, such as a formula, pattern, compilation, program, device, method, technique, or process, that: (1) derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy. 18 U.S.C. § 1839(3); Cal. Civ. Code § 3426.1(d.). A prima facie claim for misappropriation of trade secrets requires the plaintiff to show: (1) it owned a trade secret, (2) the defendant acquired, disclosed, or used the trade secret through improper means, and (3) the defendant's actions damaged the plaintiff. *KLA-Tencor Corp. v. Murphy*, 717 F. Supp. 2d 895, 906 (N.D. Cal. 2010) (citing *Sargent Fletcher, Inc. v. Able Corp.*, 110 Cal. App. 4th 1658, 1665 (2003)). In moving for a preliminary injunction, a plaintiff is not required to prove that misappropriation actually occurred, but merely that it likely occurred. *Farmers Ins. Exch. v. Steele Ins. Agency, Inc.*, No. 2:13-cv-00784-MCE, 2013 WL 2151553, at *9 (E.D. Cal. May 16, 2013).

Here, Plaintiff owned a trade secret, and—based on the evidence submitted at this time— it appears more than likely Defendant acquired this trade secret, and that Defendant's use of the trade secret will damage Plaintiff by causing Plaintiff loss of business, business advantage, and good will. (ECF No. 1 ¶¶ 17, 26, 28, 29; ECF No. 4 ¶ 16.) Accordingly, Plaintiff has met its burden of proving it is likely to succeed on the merits on both the Defend Trade Secrets Act of 2016 and California Uniform Trade Secrets Act claims.

      ii.  *Breach of Contract*

To prevail on a claim for breach of contract, Plaintiff must prove: (1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach. *In re LinkedIn User Privacy Litig.*, 932 F. Supp. 2d 1089, 1094 (N.D. Cal. 2013) (citing *Hamilton v. Greenwich Investors XXVI, LLC*, 195 Cal.

App. 4th 1602, 1614 (2011)).  Breach of confidentiality agreements, data usage agreements, and non-disclosure agreements are appropriate subjects for a breach of contract claim.  *See, e.g.*, *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Chung*, No. CV 01-00659 CBM RCX, 2001 WL 283083, at *1 (C.D. Cal. Feb. 2, 2001); *Oculus Innovative Scis., Inc. v. Nofil Corp.*, No. C 06-1686-SI, 2007 WL 4044867, at *3 (N.D. Cal. Nov. 15, 2007).

Here, Defendant entered into presumably valid agreements with Plaintiff in which Defendant agreed to refrain from disclosing any trade secrets and other confidential material. (ECF No. 1 ¶ 22.)  Defendant further agreed therein to return any of Plaintiff's property upon termination of employment.  (ECF No. 1 ¶ 22.)  There is evidence that, at a minimum, Defendant breached the signed agreements, and there is evidence that these breaches will damage Plaintiff. (ECF No. 1 ¶¶ 17, 26, 28, 29; ECF No. 4 ¶ 16.)   Accordingly, Plaintiff has met its burden of proving it is likely to succeed on a breach of contract claim.

### B.  Irreparable Harm

Plaintiff argues that Defendant's actions create a risk of irreparable injury in the form of lost business, and loss of business advantage and goodwill, which cannot be repaired with a monetary award.  (ECF No. 4 at 16.)  Courts within this circuit have found that similar conduct would result in irreparable harm.  *See, e.g.*, *Merrill Lynch*, 2001 WL 283083, at *5 (finding employer "will suffer irreparable harm as a result of the breach of client confidentiality, conversion of Merrill Lynch's property and information, incalculability of damages, loss of goodwill, and the threat to office stability and procedures caused by Defendants' violations"); *Henry Schein, Inc. v. Cook*, 191 F. Supp. 3d 1072, 1077 (N.D. Cal. 2016) ("[e]vidence of threatened loss of prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm." (quoting *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001)).  In following the reasoning of these courts, this Court finds Plaintiff has sufficiently satisfied the irreparable harm element of the *Winter* test.

### C.  Balance of Equities

The "balance of hardships tips heavily in favor of granting relief" when "an injunction merely prohibits Defendant[] from misappropriating the trade secrets."  *Merrill Lynch*, 2001 WL

283083, at *6. As Plaintiff argues, the only effect of this TRO is to preserve the status quo. (ECF No. 4 at 17.) Accordingly, the balance of hardships tips sharply in Plaintiff's favor.[1]

D. Public Interest

Injunctive relief would support the "strong public interest in favor of protecting trade secrets." *Hunter Consulting, Inc. v. Beas*, No. SACV 12-1947 AG JPRX, 2012 WL 6193381, at *5 (C.D. Cal. Dec. 10, 2012). Accordingly, Plaintiff has satisfied the requirements for a TRO.

**IV.    CONCLUSION**

Accordingly, it is HEREBY ORDERED as follows:

1.    Plaintiff's Motion for Temporary Restraining Order and Order to Show Cause Why a Preliminary Injunction Should Not Issue (ECF No. 3) is GRANTED.

2.    The Court HEREBY TEMPORARILY RESTRAINS, ENJOINS, and ORDERS Defendant as follows:

a.    Defendant shall be enjoined from possessing, using, or disclosing any of the materials taken from Plaintiff's system, and any other property of Plaintiff's that came into his possession via external hard drive download, e-mail attachment, or other medium;

b.    Plaintiff shall be entitled to immediately conduct all discovery to ascertain the nature and extent of Defendant's alleged misappropriation;

c.    Defendant shall return to Plaintiff any and all of Plaintiff's property and trade secrets, including anything obtained by Defendant from Plaintiff at any time and is ORDERED to do so and to provide an accounting of same by no later than 30 days from the date of this Order;

d.    Upon the return of all property and accounting as ordered hereinabove, Defendant is Ordered to provide a written acknowledgment confirming that he has returned all of Plaintiff's property and trade secrets, including all of the data and confidential information of Plaintiff's clients;

e.    The Court orders an inspection of Defendant's personal and work email, servers, hard drives, computer(s), mobile devices, PDAs, USB drives, solid state drives, flash drives,

---

[1]    The Court also notes that because the balance of hardships tips sharply in Plaintiff's favor, Plaintiff need only show that there are serious questions as to the merits of its complaint. *Alliance for the Wild Rockies*, 632 F.3d at 1135. That standard is certainly met here.

cloud storage locations and other electronic equipment or databases maintained by Defendant including any hosted equipment, by a neutral forensic expert mutually agreed upon by the parties to ascertain whether any of Plaintiff's trade secrets, including its customer data, exists on such devices;

        f.      Defendant shall be enjoined and prohibited from destroying, altering, transmitting, or moving any documents, in whatever form, that may contain or reflect any of Plaintiff's trade secrets; and

        g.      The Court ORDERS Defendant to show cause in writing why a preliminary injunction should not issue concerning the above, not later than twenty (20) days from the date of electronic filing of this Order. Plaintiff may file a response not later than ten (10) days after Defendant's filing.

        h.      No security bond is required in this matter.

        i.      Pursuant to Local Rule 231 and Federal Rule of Civil Procedure 65(b), any party affected by this order has the right to apply to the Court for modification or dissolution on two (2) days' notice or such shorter notice as the Court may allow.

        IT IS SO ORDERED.

Dated: February 28, 2019

Troy L. Nunley
United States District Judge